**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Herman JACKSON et al.,
Defendants-Appellants.**

**Nos. 72-1653, 72-1792 and 72-1793.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 9, 1973.

Decided July 23, 1973.

Rehearing Denied in Nos. 72-1792 and 72-1793 Aug. 21, 1973.

Rehearing Denied in No. 72-1653 Aug. 31, 1973.

Walter L. Gerash and Louis M. Fischer, Denver, Colo., for defendant-appellant Jackson.

Richard H. Duke, Denver, Colo., for defendants-appellants Price and Gainous.

Paul D. Cooper, Asst. U. S. Atty., (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Appellants Jackson, Price and Gainous, together with one Serles, were indicted on two counts of smuggling heroin into the United States. The first count charged the illegal importation or aiding and abetting in the importation of heroin [1] into the United States. The second. count charged them with conspiracy [2] in commission of the above stated offense. A jury convicted appellants Jackson and Price of Count One and all three appellants of Count Two. The defendant Serles previously entered a plea of guilty to the indictment.

The attempted smuggling was first observed at U-Tapao Airfield, Thailand. Upon reaching Travis Air Force Base, California, customs authorities opened the smuggled package and discovered over 7800 grams of 85 percent pure heroin hidden inside. The package was then sent to its destination point, Lowry Air Force Base, Colorado, where powdered soap was substituted for most of the heroin. Finally it was placed in the

---

1. 21 U.S.C. § 952(a). It shall be unlawful to import heroin into the customs territory of the United States from any place outside thereof (but within the United States) or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter or any narcotic drug in schedule III, IV or V of subchapter I of this chapter . . . . [It is stipulated that heroin is a schedule I controlled substance.]

18 U.S.C. § 2. Principals. (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. 21 U.S.C. § 952(a).
21 U.S.C. § 963 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

appropriate warehouse until picked up by unknown persons on January 11, 1972. Subsequently four persons were arrested, three of whom are appellants in this case.

Serles was the prosecution's chief witness. His testimony is crucial to the government's case and thus will be recited extensively. While stationed at U-Tapao Airfield, Serles became friends with Johnny Trice. These two men discussed shipping contraband into the United States on military flights, but as Trice was later transferred to Tinker Air Force Base, Oklahoma, the discussions went no further.

In June or July, 1971, Serles suggested to appellant Jackson that he knew a way to ship goods into the United States. Jackson's reply was "stay cool" and contact him later. Their next visit was in September, when Jackson contacted Serles. He handed Serles a paper containing instructions for shipping cargo to Tinker Air Force Base, and questioned him on his understanding of the instructions. Convinced that Serles understood shipping procedures, Jackson suggested they meet again later in the day at Jackson's "American Star Bar." When they met later that day, the conversation centered on shipping goods to the United States on military cargo flights. Jackson stated he would like to ship a package weighing over seven kilos and worth more than its weight in gold. Jackson promised the package would be packed airtight to prevent discovery by dogs, and if Serles would help out he would be paid $15,000 for his efforts. Serles accepted the offer but first wanted to ship a test package to discern whether it would pass customs inspection.

The following night Serles met Andrew Price at Jackson's tavern. Price assured Serles that Jackson had told him everything, so it was all right to proceed with the planning. At the end of their conversation Serles was given $300 in Thai money to bribe Thai workers loading the military cargo.

In the latter part of September Serles and Price began executing the plan. They picked up the test package from Jackson's house. Serles then typed up false shipping documents to be sent with the package. This package was delivered to a Thai national at Dong Muong Airfield outside Bangkok. From there it was flown to U-Tapao where another Thai worker forwarded it to Tinker Air Force Base.

At this point we shift to Trice's testimony. Trice testified he informed appellant Gainous of the discussion with Serles concerning smuggling goods into the United States. Later Gainous suggested Trice visit the "big man" at Jackson's tavern, but Trice declined. When Trice was back in the United States on a thirty-day leave, Gainous contacted him by telephone and suggested he come to a party in the south. All expenses would be paid if Trice would make the trip, but ultimately Trice decided not to go.

After his leave, Trice was stationed at Tinker Air Force Base. In August Gainous journeyed to Tinker for the purpose of offering Trice $10,000 to pick up a package sent from Thailand. Gainous also wrote down shipping instructions to aid Trice in identifying the package and urged him to write Serles concerning the shipment. In the early part of October Gainous sent Trice more instructions by special delivery. He also met with Trice to find out the best method for shipping a package from Thailand to Tinker.

It was during this time that Serles sent the test package to Tinker. Because Trice did not pick up the package, Gainous visited him again, this time to offer him $15,000 to go along with the scheme. Apparently all plans concerning Trice were thereafter discarded, as the next time Gainous contacted him was in January, 1972. This call was to inform Trice that Serles had been picked up for questioning. Trice was cautioned to "be cool" and only tell the authorities that he had known Gainous since 1966.

Serles' testimony explains the rest. Because the first test shipment was not picked up, all parties were told to "freeze." Only in December, 1971, did they proceed with their original plans. A second test package was shipped, this time to Lowry Air Force Base. Price instructed Serles on how to send this package and gave him another $300 to pay the Thai workers. Once again the package made it through customs inspection, but once again it was not picked up at its destination point. Nevertheless, on December 24 or 25, Price and Serles completed the smuggling scheme. Serles typed up false shipping documents from information supplied by Price. The real package was then picked up at Jackson's house and delivered to Thai workers who forwarded it to Lowry Air Force Base. As mentioned earlier, appellants and Serles were arrested for the attempted smuggling and subsequently convicted.

On appeal Jackson and Price contend there is insufficient evidence to support a conviction for illegally importing heroin. Jackson asserts there is no proof he participated in the smuggling. Admittedly he talked to Serles about shipping something "across the water" but the conversation went no further. Jackson's position is the prosecution failed to link him with either possession or transportation of the heroin package.

Price argues he and Serles never discussed narcotics, so any testimony by Serles concerning narcotics was mere conjecture. Price's position is that Serles admitted pictures taken at Travis of the smuggled box showed it to have been altered; since the package disappeared at U-Tapao Airfield for several days before being delivered to Travis, the chain of evidence as to the package's contents is ·broken.

■ The standard of evidentiary review in criminal cases is well settled. The evidence "must be viewed in the light most favorable to the government to ascertain if there is sufficient evidence, direct and circumstantial, togeth-·· er with the reasonable inferences to be drawn therefrom, from which the jury may find the defendant guilty beyond a reasonable doubt." United States v. Butler, 446 F.2d 975, 978 (10th Cir. 1971). The record indicates Jackson told Serles he wanted to ship something back to the United States weighing more than seven kilos and worth more than its weight in gold. What eventually was sent did weigh over seven kilos and was reportedly worth $10,000,000. Jackson handed Serles instructions for shipping a package to Tinker Air Force Base. At approximately the same time Jackson talked to Serles, Gainous asked Trice to pick up a package destined to Tinker from Thailand. Jackson offered Serles $15,000 to send a package to the United States and promised the contents would be packed airtight to prevent discovery by police dogs. Jackson played an important part in other aspects as well. Price mentioned Jackson in his conversations with Serles. Jackson's bar was the focal point for much of the operations; it was there where Price and Serles first met. Gainous suggested to Trice that he meet the "Big Man" at Jackson's tavern. Serles was told to meet Jackson at the tavern on the night Jackson offered him $15,000. Jackson's house also entered the picture. It was there where Price picked up the first test package and where Price and Serles picked up the real package.

■ The evidence against Price is also convincing. Serles testified that Price was the one with whom he had the most dealings. Price gave Serles the money to pay off the Thai workers. Price informed Serles when and where the shipments were to be sent. It was Price who delivered the packages and gave Serles the necessary shipping documents. Serles testified the heroin package reaching Travis Air Force Base was the one he received from Price.

■■ It is evident there is substantial evidence to convict Jackson and Price. What counsel asks is that we hold Serles' and Trice's testimony insufficient to warrant a conviction; but this

we cannot do because the weight to be given testimony is a function of the jury rather than of the appellate court. United States v. Frazier, 434 F.2d 238 (10th Cir. 1970). Admittedly much of the evidence linking Jackson and Price to the smuggling attempt was circumstantial, but as we have mentioned before, the evidence supporting guilt may be circumstantial. United States v. Henry, 468 F.2d 892 (10th Cir. 1972). The evidence need not conclusively exclude every other reasonable hypothesis nor must it negative all possibilities except guilt. United States v. Henry, *supra*; Bailey v. United States, 410 F.2d 1209 (10th Cir. 1969), cert. denied sub nom., 396 U.S. 933, 90 S.Ct. 276, 24 L. Ed.2d 232. Under our standard of review, we therefore must conclude the evidence was sufficient to warrant appellants' convictions.

The next argument proffered concerns the conspiracy convictions of all three appellants. It is alleged there has been insufficient evidence to conclude that appellants agreed to violate the federal narcotics laws; at best the government has merely shown several independent, unrelated conspiracies. Once again we must give deference to the jury's decision if the conduct, acts and circumstances are such that minds of reasonable men might conclude therefrom the existence of an unlawful agreement. Jones v. United States, 251 F.2d 288 (10th Cir. 1958), cert. denied, 356 U.S. 919, 78 S.Ct. 703, 2 L.Ed.2d 715.

■■ It is not essential that each conspirator have knowledge of all the activities of the conspirators nor must each participate in all the activities in furtherance of the conspiracy. McManaman v. United States, 327 F.2d 21 (10th Cir. 1964), cert. denied, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307. If the conspiracy is established and the convicted persons knowingly contributed their efforts in furtherance of it, then the convictions must stand. Young v. United States, 168 F.2d 242 (10th Cir.

1948), cert. denied, 334 U.S. 859, 68 S. Ct. 1534, 92 L.Ed. 1780.

The evidence, viewed in the light most favorable to the government, reveals that Jackson and Serles met on two occasions to discuss shipping contraband into the United States. Jackson offered Serles $15,000 to participate in the smuggling venture. Price mentioned Jackson in his conversations with Serles and picked up the contraband package from Jackson's house. Gainous suggested that Trice meet the "big man" at Jackson's tavern, just as Jackson had told Serles to meet him there. Gainous offered Trice the same amount of money to pick up the heroin package that Jackson offered Serles to send it. Gainous, through some channel of communication, knew of Serles' arrest two days after it occurred. Shortly before Jackson and Gainous were arrested they were seen together in Jackson's trailer home in Goldsboro, North Carolina.

■■ Conspiracy by nature involves secrecy and thus the proof to support a conviction is necessarily indirect. The elements of the crime may be established by circumstantial evidence and the common purpose inferred from the development or combination of circumstances. Jordan v. United States, 370 F.2d 126 (10th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595 (1967); Baker v. United States, 329 F. 2d 786 (10th Cir. 1964), cert. denied, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56; United States v. Figueroa-Espinoza, 454 F.2d 590 (9th Cir. 1972); United States v. Padilla, 374 F.2d 996 (2d Cir. 1967). The appellants' uniform actions indicate there was a mutual agreement to commit an illegal act. From these facts a jury might rationally infer that appellants jointly conspired to violate the narcotics laws.

■ Gainous argues the court erred in failing to instruct the jury on multiple conspiracies. His position is the jury should have been told that possibly more than one conspiracy existed

so they could decide whether Gainous' conduct was totally unrelated to the aborted smuggling attempt. We find no merit in this argument. The court carefully explained to the jury what constitutes a conspiracy. It was emphasized that not only must there be a willful conspiring together of two or more persons to commit an offense against the United States, but the offense is complete only if it appears from the evidence that any one of the overt acts alleged in the indictment is committed for the purpose of effecting the crime. The instructions further state: "Mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common names and interests does not necessarily establish proof of the existence of a conspiracy." At conclusion of instructing the jury, the trial court asked counsel for Gainous if he objected to the instructions as they were given. Counsel replied in the negative. As a specific objection now urged for the first time, it is untimely. Aside from the issue of timeliness, however, we find no error in the court's conspiracy instructions. The trial court's function is to instruct on the general principles of the law of the case. It is not obligated to outline all possible factual situations which would fail to show one's connection with a conspiracy. Jones v. United States, *supra*; Butler v. United States, 197 F.2d 561 (10th Cir. 1952). The trial court's instructions clearly set out the elements of a conspiracy, and we can find no error in the manner they were given.

▬ Jackson next argues the trial court erred in admitting exhibits 8 through 13 without giving adequate limiting instructions concerning their consideration. Exhibit 8 is a document Serles testified he prepared according to directions given by Price. The court admitted the exhibit with the cautionary

instruction to the jury: "The Exhibit 8 is received and admitted and may be considered by the jury to the extent that Mr. Serles' testimony that the writing thereon is his. Otherwise it's excluded." Exhibits 9 through 13 are photographs of the box given Serles by Price. The trial court also gave limiting instructions on those.[3] Jackson's position is that Exhibits 8 through 13 impermissibly stigmatize him. Because Price did not testify, counsel for Jackson could not remove this stigma through cross-examination; thus it was up to the trial court to either exclude the exhibits or properly instruct the jury as to their irrelevancy to Jackson. Counsel argues the court's instructions were insufficient to protect his client's constitutional rights. Supporting his argument he cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where two defendants were jointly tried on a charge of armed postal robbery. In *Bruton*, defendant Evans did not take the stand, but a postal inspector testified that Evans had confessed that he and defendant Bruton committed the robbery. The jury was instructed to disregard the inspector's testimony relating to Bruton because it was inadmissible hearsay. At the trial's conclusion the jury found both defendants guilty. On appeal to the Supreme Court, Bruton's counsel argued the postal inspector's testimony relating to Evans' confession violated Bruton's Sixth Amendment right to confrontation. The Court accepted this argument and held that because Evans did not testify the admission of his confession added substantial weight to the prosecution's case in a manner not subject to cross-examination. Although the jury was admonished to disregard Evans' confession as it related to Bruton, this limiting instruction was insufficient to remedy the encroachment on Bruton's Sixth Amendment rights.

We do not believe *Bruton* applies in this case, for in *Bruton* a co-defendant

---

3. "Exhibits 9 through 13 will be admitted. Presently it appears that this box transaction was with Mr. Price and presently the jury is instructed to limit its consideration at this time to the charges against Mr. Price."

testified to the other defendant's guilt. Exhibits 8 through 13 in the present case might implicate Price, but nowhere do the exhibits indicate that Price's acts or statements inculpate Jackson. There was no violation of Jackson's right to cross-examine by allowing the exhibits to be admitted as evidence. As the Court stressed in *Bruton*, the reason limiting instructions were not adequate was because a jury, in determining Bruton's guilt, probably could not forget defendant Evans' confession. Exhibits 8 through 13 can in no way be considered so powerfully incriminating to Jackson that limiting instructions would not sufficiently protect his rights. The trial court, as stated above, instructed the jury at the time exhibits 8 through 13 were admitted that their admissibility was limited to Price. The trial court during his closing instructions again warned the jury not to accept acts or statements made out of court by one person against another if the other person was not present to hear the statement or see the act done. We find these limiting instructions adequately protected Jackson's constitutional rights and thus find no error in admission of the exhibits. Lowther v. United States, 455 F.2d 657 (10th Cir. 1972), cert. denied, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102; United States ex rel. Nelson v. Follette, 430 F.2d 1055 (2d Cir. 1970), cert. denied, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818; White v. United States, 415 F.2d 292 (5th Cir. 1969), cert. denied, 397 U.S. 993, 90 S.Ct. 1128, 25 L. Ed.2d 400.

Gainous contends exhibit 36 is the fruit of an illegal search and should not have been admitted. Exhibit 36 is a document containing written instructions for shipping goods to Tinker Air Force Base. The document was found in Gainous' billfold during the search of his home. Although the search warrant was valid, Gainous argues the warrant did not extend to searching the billfold since it was brought to the house by treasury authorities. Apparently Gainous was arrested while on alert call with the Strategic Air Command, Seymour Johnsen Air Force Base, North Carolina. Rather than living at home while on alert, Gainous stayed in military quarters near the alert area. After his arrest the commanding officer ordered his personal effects be removed from the military quarters. They were turned over to the Office of Special Investigation, which in turn handed them to treasury agents. Ultimately these personal effects were taken to Gainous' house and searched under the auspices of a valid search warrant.

Even if we assume it was error to admit exhibit 36, Gainous still has the burden of showing that its admission was prejudicial. *See* Ellis v. State of Oklahoma, 430 F.2d 1352 (10th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971); United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). An error possibly prejudicial in a close case does not require reversal if the evidence of defendant's guilt is strong. Jennings v. United States, 364 F.2d 513 (10th Cir. 1966), cert. denied, 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677 (1967); Fed.Rules Crim.Proc., 18 U.S.C. Rule 52(a). Without exhibit 36 the evidence against Gainous is still strong and substantial. Considering the record as a whole, we are unable to say Gainous was prejudiced by admission of exhibit 36.

Appellants next argue the trial court erred in failing to order a mistrial after it had commented on the truthfulness of Serles. Jackson's counsel during cross-examination asked Serles if he knew what was in the last box given him by Price. The court, in referring to Serles' reply that he did not know what the box contained, stated that apparently Serles was trying to tell the truth. Counsel objected to this comment as an invasion of the jury's province. In response to this objection the trial court unequivocally instructed the jury that they were the sole judges of the

witnesses' credibility and thus they were not bound by the court's comment. We do not find the isolated comment so unfair as to deny appellants a fair trial. The trial was fairly conducted, and if it could be concluded that any unfairness resulted from the comment, such unfairness was sufficiently removed by the trial court's instructions. United States v. Cunningham, 423 F.2d 1269 (4th Cir. 1970).

 In connection with the above argument Jackson contends the court erred in restricting cross-examination of Serles on three occasions. The first alleged error occurred when the court prevented counsel from inquiring into conversations between Serles and his supervisor, John Wickes, in August or September, 1971, concerning the shipment of contraband. The second restriction occurred when the court made its comment about Serles' "truthfulness," and the final restriction occurred when the court prohibited counsel from attacking Serles' credibility with respect to his knowledge of heroin.

The right of confrontation extends to areas of cross-examination. Limiting cross-examination in areas which are properly subject to cross-examination does constitute reversible error. *See* Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). This rule usually applies, however, when the limitation is a complete denial of access to an area which is properly the subject of cross-examination. United States v. Jorgenson, 451 F.2d 516 (10th Cir. 1971), cert. denied, 405 U.S. 922, 92 S. Ct. 959, 30 L.Ed.2d 793 (1972). In the present case, Jackson's counsel was not denied access to any area properly subject to cross-examination. His objection goes to the extent of cross-examination allowed by the court; and as we have held on other occasions, the extent of cross-examination is discretionary with the trial judge. United States v. Jorgenson, *supra*; Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970). Such exercise of discretion should not be

overruled unless we are convinced the court's ruling is prejudicial. Foster v. United States, 282 F.2d 222 (10th Cir. 1960). After reviewing the whole record, we are convinced the trial court's ruling did not prejudicially curtail Jackson's right of cross-examination.

 Appellants next attack the verdict as being founded on offenses that are duplicitous. It is their position proof of identical facts is required to support both counts of the indictment; thus the offenses constitute double jeopardy. As an offshoot of this argument, appellants claim error in sentencing consecutively on both counts when the same facts are necessary to prove both offenses. The double jeopardy clause does not bar a single trial for multiple offenses arising out of one transaction if each offense rests on different criminal elements. Smith v. Gaffney, 462 F.2d 663 (10th Cir. 1972). "When each offense requires proof of a fact not essential to the other, the charges are not identical and the accused can be charged, tried and convicted of both offenses even though the charges arise out of the same acts." Goldsmith v. Cheney, 447 F.2d 624, 627 (10th Cir. 1971). The law is well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes. The substantive offense of illegally importing heroin into the United States requires no more than one person for its commission. Similarly, aiding and abetting does not require an agreement, for these terms are employed to make the defendant a principal when he consciously shares in a criminal act regardless of the existence of a conspiracy. Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). The essence of a conspiracy charge is an agreement to commit an offense against the United States. Whether Jackson and Price were convicted as principals or for aiding and abetting, it is clear their conviction does not rest on the agreement. Thus the offenses in Count One require proof not essential to the conspiracy conviction. Pereira v. United States,

347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

■ It logically follows that consecutive sentences do not constitute double punishment for the same crime. The test to determine identity of offenses is whether each count requires proof of a fact or element not required by the other. Doherty v. United States, 193 F.2d 487 (10th Cir. 1951). Identity of offenses turns on whether the same evidence is required to prove both offenses rather than identity of evidence actually produced. "The fact that the acts constituting the substantive offense also may be pleaded and proven as acts done in furtherance of the conspiracy is not determinative of their identity." Nolan v. United States, 423 F.2d 1031, 1048 (10th Cir. 1969), cert. denied, 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970). Accordingly we find no error in the imposition of consecutive sentences.

■ Appellants allege the trial court erred in refusing to orally reinstruct the jury after they requested the opportunity to review the instructions. Approximately forty minutes after the jury retired for its deliberations it sent a note to the court requesting an opportunity to review the instructions that had been given. The court, with no objection by counsel, sent back a note stating that instructions in federal court are oral, not written, and therefore their request was denied. We do not find the trial court's refusal prejudicial error. The closing instructions were unequivocal; hence whether or not additional instructions should have been given is within the trial court's discretion. The only time we will entertain an argument for reversal is when the trial court's discretion has been clearly abused. Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970). No such abuse is apparent here.

■ Jackson next contends he was inadequately represented at trial. This contention is premised on his counsel's failure to move for a change of venue or a continuance because of prejudicial publicity. Apparently there were newspaper articles and television scripts sensationalizing the smuggling attempt prior to and during the trial. Jackson asserts his trial counsel knew of the prejudicial publicity but made no effort to protect Jackson from it, and thus Jackson was deprived of effective counsel in violation of the Sixth Amendment. As we have previously said: "There is a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the denial of the right to have such assistance that gives the right to challenge a judgment of conviction. . . . ." Hudspeth v. McDonald, 120 F.2d 962, 968 (10th Cir. 1941). Jackson was not denied the right to effective assistance of competent counsel. The record discloses Jackson's trial counsel to have been extremely capable; nowhere does his conduct give rise to an inference of incompetence.

■ Nor does the unfavorable publicity deny appellants a fair trial. Admittedly the right to a fair and impartial trial supercedes any right to sensationalize and prejudicially publicize its collateral aspects, but unfavorable publicity does not of itself raise a presumption of prejudice. Dennis v. United States, 302 F.2d 5 (10th Cir. 1962), rev'd on other grounds, 384. U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). Even with unfavorable publicity a fair trial may be obtained. Before we will reverse a conviction, the publicity must be so prejudicial as to constitute a denial of due process. Appellants correlate their situation to the one found in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), where the news media went so far as to publicly demand the conviction of Sheppard. We find little similarity between the two situations, for appellants' exposure to unfavorable publicity did not reach the magnitude suffered by Sheppard. Nor is it apparent the jurors were prejudiced by the publicity since all trial counsel

**1178**

agreed to omit on voir dire examination any mention of the publicity. Considering the totality of circumstances, we find no due process violation stemming from the unfavorable publicity.

Appellants' final argument is the federal district court of Colorado lacked proper venue to try this case. They assert the offense was completed in California where the smuggling attempt was first discovered. Supporting this argument appellants rely on United States v. Lember, 319 F.Supp. 249 (E.D.Va.1970), where a defendant was found to have completed the offense of smuggling marijuana at the moment his smuggled package arrived on United States' soil and was opened by customs authorities. The trial court felt the offense was complete when first discovered and thus the case could not be tried in the district where the smuggled package was subsequently delivered.

■ We are aware Article 3, § 2, cl. 3 of the Constitution assures that criminal trials "shall be held in the State where the said Crimes shall have been committed." We also realize that questions of venue are more than matters of procedure. "They raise deep issues of public policy in the light of which legislation must be construed." United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944). The provision for trial in the vicinity of the crime protects accused against the hardship and unfairness incident to a trial conducted in a remote place.

■ Title 21 U.S.C. § 952(a), which prohibits importation of certain controlled substances into the United States unless otherwise statutorily allowed, does not specifically provide for the fixing of venue. Under such circumstances the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it. United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946). Section 952(a) prohibits importation of heroin into the United States from any place outside thereof. The statute does not necessarily pertain to any particular locality such as the place of entry, for it prohibits importation anywhere in the United States. Appellants charge, however, the offense was completed the moment the smuggling attempt was discovered in California and thus does not continue to the smuggling attempt's destination point in Colorado. Admittedly a crime was committed the moment the heroin package entered the United States, but discovery of the crime in California did not exhaust it. *See* United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L. Ed. 1168 (1910). The illicit scheme originated in Thailand and from there it extended to Lowry Air Force Base, Colorado. During the illicit venture the heroin was discovered in California but certainly the crime was not completed there. It was a continuous crime which received no finality until the package arrived at Lowry Air Force Base. Since an offense committed in more than one district "may be inquired of and prosecuted in any district which such offense was . . . continued," 18 U.S.C. § 3237,[4] venue for § 952(a) lies in any district used by appellants to complete their crime. *See* United States v. Cores, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958). We therefore reject United States v. Lember, *supra*, in all respects inconsistent with our holding herein.

■ It necessarily follows that as the substantive crime was committed in

---

4. § 3237(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

Colorado, the crime for aiding and abetting [5] may also be tried in that district. Congress has declared that an aider and abettor may be punished as a principal, and hence he may be punished in the same district as the principal. United States v. Kilpatrick, 458 F.2d 864 (7th Cir. 1972); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966).

We should further note no objection was made to the case being tried in Colorado, and thus appellants waived their right to trial in another venue. Improper venue may be waived when it is apparent on the face of the indictment that the case should be tried elsewhere. The facts in this case convince us there was no reason for waiting until completion of the trial to raise the venue argument. Jenkins v. United States, 392 F.2d 303 (10th Cir. 1968); Hilderbrand v. United States, 304 F.2d 716 (10th Cir. 1962); Bickford v. Looney, 219 F.2d 555 (10th Cir. 1955).

Affirmed.