UNITED STATES of America, Appellee,

v.

Jose Del Carmen LEAL, a/k/a "Aldo," Defendant, Appellant.

No. 86–1117.

United States Court of Appeals, First Circuit.

Sept. 9, 1987.

Decided Oct. 19, 1987.

Leal was sentenced on all counts to a total of twelve years imprisonment, a $20,000.00 fine and a special parole term of six years.

Leal appeals his conviction on two grounds, both of which are related to his conviction for importation. We find neither of his claims meritorious.

I.

On August 27, 1985, the Ned Lloyd Holandia, a container ship of Dutch Registry, arrived in Ponce, Puerto Rico, from Jamaica and was berthed at the Ponce Pier where its cargo was immediately off-loaded. On August 28, 1985, United States Customs officials, acting upon information not disclosed at trial, undertook an investigation of the ship's cargo. This investigation culminated in the discovery of 2,253 pounds of marijuana which had been hidden in a shipping container whose contents had been described as scrap metal in the Ned Lloyd Holandia's manifest. After discovering the ship's illicit contraband, the customs officials resealed the shipping container and established around-the-clock covert surveillance of the container.

Seth M. Kalberg, Jr., Boston, Mass., by Appointment of the Court, for defendant, appellant.

Jorge E. Vega-Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R. was on brief, for appellee.

Before CAMPBELL, Chief Judge, GARTH,* Senior Circuit Judge, and SELYA, Circuit Judge.

PER CURIAM.

Appellant Jose Del Carmen Leal ("Leal") was convicted of conspiring to knowingly and intentionally possess with intent to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1) and 846 (1982), with importing a controlled substance, 21 U.S.C. § 952 (1982), and with aiding and abetting the unlawful possession of a controlled substance with intent to distribute it, 21 U.S.C. § 841(a)(1) (1982); 18 U.S.C. § 2 (1982).

One of Leal's codefendants, Felix Serra Nieves ("Serra"), the government's primary witness at trial, testified that three days after the ship arrived in Puerto Rico, Serra was approached by another codefendant, Jose Albertorio Casiano ("Albertorio"), a security guard at the pier. Albertorio asked Serra if he would be interested in assisting in the unloading of the marijuana. Serra agreed.

On September 3rd, Albertorio and Serra met briefly with Leal and the three agreed that Serra and Leal would travel to San Juan. There they met with two unidentified individuals in a hotel. During this meeting, Serra was given keys to a Suzuki automobile and he was instructed to drive back to Ponce. In Ponce, Serra picked up Albertorio and codefendant Rafael Santiago, and the three proceeded to the Ponce beachfront where they awaited Leal's return from San Juan. After Serra's departure from San Juan, Leal obtained from the

* Of the Third Circuit, sitting by designation.

two unidentified men a penciled drawing of the container containing the contraband. He then returned to Ponce for his rendezvous with Serra, Albertorio and Santiago.

At 4:00 p.m. the same day, members of the customs surveillance team observed the marijuana-filled container being moved to a spot in the enclosed off-loading area directly adjacent to the surrounding fence. Testimony at trial disclosed that the relocation of the container had been ordered by Albertorio.

At approximately 10:30 p.m., the four defendants proceeded to the Ponce Pier where Leal dropped off his three codefendants. Serra and Albertorio then climbed over the fence surrounding the container area and onto the container containing the marijuana. Three members of the surveillance team watched Serra and Albertorio unload a number of bales of marijuana and drop them to Santiago who remained on the ground. At around 11:00 p.m., customs agents moved in and arrested Serra and Albertorio on the scene.

On September 4, 1985, local narcotics agents, acting on information provided by Albertorio and Serra, arrested Leal. On September 10th, Santiago was also arrested.

## II.

Leal raises two arguments in this appeal. Because both of Leal's claims relate to his conviction for importation of marijuana, we have set out the relevant text of 21 U.S.C. § 952 (1982) below.[1]

Leal's first claim is that the evidence adduced by the government at trial was insufficient to sustain his conviction for importation of a controlled substance in violation of § 952(a). The essence of his argument is that he did not knowingly import the marijuana found in the shipping container into the United States and is thus implicated only with respect to the activities that transpired after the marijuana had been off-loaded. In support of his claim, Leal points to the fact that there was no evidence "that [he] had been to Jamaica where the importation originated ... [or that] he participated in the clandestine placing of the marijuana in the shipping container in Jamaica, or elsewhere, or arranged that activity." Appellant's Brief at 8. Leal also stresses that seven days had elapsed between the date on which the contraband was off-loaded and the date on which his codefendants were arrested attempting to remove the contraband from the pier.

■ While the precise temporal parameters of importation have not yet been addressed by this Court, other courts of appeals have analyzed this issue. It is clear that the crime of importation does not end the instant the controlled substance enters the United States. *See United States v. Martinez*, 763 F.2d 1297, 1304 (11th Cir. 1985). Rather, importation is a " 'continuous crime' that is not complete until the controlled substance reaches its final destination point." *United States v. Corbin*, 734 F.2d 643, 652 (11th Cir.1984) (citing *United States v. Jackson*, 482 F.2d 1167 (10th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974)); *Martinez*, 763 F.2d at 1304; *United States v. Godwin*, 546 F.2d 145 (5th Cir.1977).

In isolating what constitutes the final destination point, the Third Circuit has stated, in construing the term "importation" for purposes of laying proper venue, that the final destination of imported contraband is that point *beyond* the port of entry where the contraband finally comes to rest prior to distribution. *See United States v. Sandini*, 803 F.2d 123 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1306, 94 L.Ed.2d 161 (1987). Similarly, the court in *United States v. Jackson*, 482 F.2d 1167

---

1. 21 U.S.C. § 952 provides, in pertinent part, as follows:

   **Importation of controlled substances**
   \*  \*  \*  \*  \*  \*

   It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV or V of subchapter I of this chapter....

(10th Cir.1973), has held that the importation of a controlled substance was not complete on its arrival in California but continued until the heroin arrived at its destination in Colorado:

> Admittedly a crime was committed the moment the heroin package entered the United States, but discovery of the crime in California did not exhaust it. [citations omitted]. The illicit scheme originated in Thailand and from there it extended to Lowry Air Force Base, Colorado. During the illicit venture the heroin was discovered in California but certainly the crime was not completed there. It was a continuous crime which received no finality until the package arrived at Lowry Air Force Base.

*Jackson,* 482 F.2d at 178.

■ With these principles forming the backdrop for our analysis, we need not, in this case, formulate any rule prescribing the outermost limits of importation because we are satisfied that whatever those limits might be, they were not exceeded here. The importation of marijuana in the instant case was still in progress at the time the defendants were attempting to remove the contraband from the enclosed container area. While it is true that the importation of the marijuana had begun when the contraband was off-loaded prior to Leal's direct involvement, the act of importation continued and was ongoing at the time Leal was implicated by his codefendants' attempt to remove the contraband from the pier.

### III.

■ Leal's second claim arises out of the district court's ruling that there was probable cause for his arrest and that certain evidence introduced by the government at trial was therefore admissible as having been obtained by a search incident to a lawful arrest. Leal argues that he was entitled to a full suppression hearing under Fed.R.Crim.P. 12, despite that fact that he failed to move for such a hearing prior to the beginning of his trial. The relevant sections of Fed.R.Crim.P. 12 read as follows:

> **(b) Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following *must* be raised *prior to trial:*
>
> \*     \*     \*     \*     \*     \*
>
> (3) Motions to suppress evidence; …
>
> \*     \*     \*     \*     \*     \*
>
> **(f) Effect of Failure to Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial … shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

*Id.* (emphasis added).

The language of Fed.R.Crim.P. 12(b)(3) and (f) makes clear that, in the absence of a grant of relief by the district court on a showing of good cause, Leal waived his right to a suppression hearing by failing to move for such a hearing prior to the commencement of his trial. *See United States v. Gomez,* 770 F.2d 251, 253 (1st Cir.1985); *United States v. Barletta,* 644 F.2d 50, 54 (1st Cir.1981). The decision to grant or deny Leal relief under Fed.R.Crim.P. 12(f) rests in the district court's sound discretion and may not be overturned by this court absent a showing of abuse. *Gomez,* 770 F.2d at 253. Here, no such abuse has been shown.

■ Moreover, even had Leal preserved this issue for appeal, which he did not, the district court properly found probable cause for Leal's arrest, thus making the search incident to that arrest lawful. "The constitutionality of a warrantless arrest 'depends … upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " *United States v. Figueroa,* 818 F.2d 1020, 1023 (1st Cir.1987) (quoting, *Beck v. Ohio,* 379

U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Of course, the government need not prove beyond a reasonable doubt that a suspect has committed an offense prior to making a warrantless arrest, *Figueroa*, 818 F.2d at 1023; *United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979), but need only make an objective showing that as a matter of probabilities, the defendant was involved in the criminal activity for which he was arrested. *Figueroa*, 818 F.2d at 1023–24; *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir.1977).

The probabilities in this case weigh in the government's favor. On the night of September 3, 1985, after Leal's codefendants had been arrested, they provided the Ponce Police Department and the customs officers with descriptions of Leal. Serra described him as "Venezuelan, white, brown hair, tall, thin ... and approximately 40 years old," while Albertorio described "Aldo" as a "Venezuelan, white, brown hair, brown eyes and 5'9"–5'11" [in] height and approximately 39–49 years of age." [2]

Moreover, prior to arresting Leal, the officers had been informed by Serra and Albertorio that Leal was registered in the Holiday Inn Hotel under the name "Aldo J. Leal," as the hotel register ultimately reflected. These descriptions and information provided by Leal's codefendants immediately after their arrest, were "sufficient in themselves to warrant a man of reasonable caution in the belief that the suspect had committed or was committing an offense." *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir.1985) (citing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).

### IV.

We will affirm Leal's judgment of sentence ordered by the district court on January 25, 1985.

**2.** The information provided to the authorities and referred to in the text was available to the government and would have been produced at a suppression hearing had one been requested and held. *See* Appellee's Brief at 11.