FILED
United States Court of Appeals
Tenth Circuit

December 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

STANTON BEGAY,

      Defendant - Appellant.

No. 12-2202
(D.C. No. 1:11-CR-00900-BB-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH** and **BALDOCK**, Circuit Judges, and **JACKSON**, District Judge.[**]

---

    A jury convicted Defendant Stanton Begay of kidnapping and aggravated

sexual abuse of a child in violation of 18 U.S.C. §§ 1201(a)(2) and 2241(c). The

Court will refer to this child as "AP." The district court sentenced Defendant to 50

years' imprisonment for each offense, to be served concurrently. Defendant now

---

    [*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. Furthermore, this order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

    [**] Honorable R. Brooke Jackson, United States District Judge for the District of Colorado, sitting by designation.

challenges his conviction, arguing the district court erroneously: (1) indicated to the jury that AP was credible; (2) included an "unbalanced" jury instruction undermining Defendant's theory that the prosecution coached AP; and (3) allowed the prosecution to appeal to broader societal issues and sympathies in its closing argument. Defendant contends these errors, taken individually or cumulatively, require reversal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court.

I.

This case concerns a late 2010 encounter between Defendant and AP, a paraplegic girl who was 15 years old at the time. In the indictment, the grand jury charged that Defendant, in violation of 18 U.S.C. § 1201(a)(2), "did willfully and unlawfully kidnap, abduct, seize, confine and carry away [AP], and did hold her to commit an aggravated sexual assault upon her." The grand jury also charged Defendant with violating 18 U.S.C. § 2241(c) "by using threats of serious bodily injury or force [to] unlawfully and knowingly engage in and attempt to engage in sexual acts with [AP] . . . who had attained the age of twelve (12) but had not then attained the age of sixteen (16) years, and who is at least four (4) years younger than the defendant." The sexual acts, the grand jury charged, "consisted of contact, by penetration, however slight, of [AP's] vulva by the penis of the defendant and penetration of [AP]'s mouth by the penis of the defendant." See 18 U.S.C. § 2246(2) (defining "sexual act"). Defendant and AP are Navajo, and the incident occurred on the Navajo Nation in Prewitt, New Mexico. Thus, the charges were also brought

2

under the Indian Major Crimes Act, which requires federal prosecution of any Indian who, within Indian country, kidnaps any person or assaults a minor under 16 years of age. See 18 U.S.C. § 1153(a). At the end of a four-day trial, the jury returned guilty verdicts on both counts. After sentencing, Defendant timely appealed.

## II.

Defendant's first argument concerns statements the district court made to AP during her testimony at trial. While on the stand, AP answered a number of the prosecutor's specific questions about the encounter by saying, "I don't remember." At one point, after AP did not answer a question verbally, the prosecutor told AP she needed "to answer the question one way or the other, or let us know that you don't remember." Moments later, the district court interjected:

> [AP], this is probably scary for you. You've got a lot of strangers looking at you, and it's a formal setting. Why don't you just try to tell us what you remember? Could you do that, do you think? Tell us what you remember about that afternoon. And if we need to ask questions, maybe, or whatever, we'll go back and ask some other questions. But just tell us what you remember.

In response to a later objection that the prosecutor was leading, the court stated:

> Try not to suggest it. I don't want—just tell us what happened, [AP], what happened that day. I know it's difficult perhaps to describe something that's intimate. But just tell us what happened. And then maybe your lawyer will go back and ask questions if she needs to. What do you remember about that?

Defendant did not contemporaneously object to these comments or to the court's subsequent variations of the statement "just tell us what happened." At a bench

3

conference prior to a break in proceedings, however, his counsel said:

> Your Honor, I believe some of the comments the Court made could be construed as to believe that my client is guilty, like you said it's hard to talk about something that's intimate to [AP]. I ask that you regive the instruction that nothing you said or do is meant to express your opinion as to what a verdict should be, as well as you can add on the "Don't discuss it until the evidence is in." I will make a motion for a mistrial. But on the off chance the Court denies that, I would request the instruction as the alternative, Your Honor.

Immediately after the bench conference, the court instructed the jury not to "reach any conclusions until you've heard all of the evidence," and that "nothing that I may say or do during the course of the trial is intended by me to indicate, or should be taken by you to indicate, what your verdict should be." Defendant renewed his motion for a mistrial after the break; the court denied it.

Defendant argues the district court should have granted a mistrial because the court conveyed to the jury belief in AP's credibility. "We review a district court's refusal to grant a mistrial for abuse of discretion." United States v. Martinez, 455 F.3d 1127, 1129 (10th Cir. 2006) (quoting United States v. Stiger, 413 F.3d 1185, 1194 (10th Cir. 2005)). We review a court's comments on the evidence for an abuse of discretion, as well. See Massey v. United States, 358 F.2d 782, 787 (10th Cir. 1966). Defendant separates this argument into four subparts.

First, Defendant asserts, the court put itself "squarely in the government's camp" by urging AP to testify when she was having "great difficulty" talking about the incident. We disagree. AP's testimony fills up nearly fifty pages of the record

4

before the court's first disputed intervention, indicating she was *not* reluctant to testify, generally speaking. She did, however, have difficulty answering very specific questions about the encounter at the core of the case. After AP answered "I don't remember" to several pinpoint queries, the court intervened. The transcript considered as a whole indicates the court was not so much concerned with getting AP to testify—again, she gave no indication she was not a willing witness—as it was with finding the most efficient way for her to do so. The court made this plain during a short recess before it intervened when it told the prosecution, "And you might—just as a suggestion, just ask her what she remembers about that day. *Things might go a little more quickly*. She doesn't seem to be able to focus in on the questions." (emphasis added). In other words, the court thought asking AP open-ended questions about the encounter would be more efficient than asking hyper-specific questions. When the prosecution continued to ask specific questions, producing the same results, the court stepped in. The court acted well within its discretion. As we have stated, under the Canons of Judicial Ethics federal judges have an "obligation to be industrious, prompt, and efficient" in the dispatch of their business. United States v. Baer, 575 F.2d 1295, 1301 (10th Cir. 1978).

Furthermore, the court's decision to intervene for efficiency did not improperly convey to the jury the court was "in the government's camp." For all the court and the jury knew at the time, AP might have proceeded to exonerate Defendant. Finally, even if the court's statements could be interpreted as "urging"

5

or "encouraging" AP to testify, Defendant provides no case law mandating reversal. And for good reason. The Supreme Court has stated that the "policy of the law must be to encourage testimony." Yates v. United States, 355 U.S. 66, 73 (1957).

On a similar note, Defendant contends the district court's repeated exhorting of AP to "tell us what happened" or "tell us what you remember" improperly informed the jury the court thought AP was telling the truth and undermined Defendant's argument that AP was lying. We again disagree. The presiding judge at a trial may comment on, analyze, and dissect evidence. United States v. Nickl, 427 F.3d 1286, 1293 (10th Cir. 2005). The judge may not, however, distort or add to the evidence, nor is he allowed to "assume the role of a witness" or "comment directly on the ultimate factual issue to be decided by the jury" Id. (citations omitted). A trial judge "should not become an advocate and argue the case for either side." United States v. Chanthadara, 230 F.3d 1237, 1249 (10th Cir. 2000) (citation omitted). Here, the district court did not become an advocate for the prosecution by merely asking AP to "tell us what you remember" or "what happened," as these phrases are merely different ways of saying "tell us the truth." In no way could anyone construe the court as commenting directly on the underlying veracity of her testimony, much less the ultimate factual issue in the case. After all, if AP proceeded to lie, she most certainly was *not* testifying to "what happened" or "what she remembered," as the district court requested. Indeed, in his very own brief Defendant uses a nearly identical phrase as a synonym for telling the truth. See

6

Def's Op. Br. at 29 ("[AP] was having a hard time [testifying] because she was trying to remember the story she told to the forensic interviewer, not *what really happened*." (emphasis added)).

Furthermore, Defendant provides no case law indicating such innocuous language from a judge is improper, much less error deserving of a mistrial. To the contrary, our decision in United States v. Jackson, 482 F.2d 1167 (10th Cir. 1973), counsels the opposite. In Jackson the district court actually stated the witness was "apparently . . . trying to tell the truth." Id. at 1175. Despite this open declaration of credibility, we concluded if "any unfairness resulted from the comment, such unfairness was sufficiently removed by the trial court's" immediate and unequivocal instruction to "the jury that they were the sole judges of the witnesses' credibility and thus they were not bound by the court's comment." Id. at 1175–76. If the statement in Jackson did not merit a new trial, the statements here most certainly do not, especially since the court issued a similar cautionary instruction to the jury at Defendant's request.[1]

---

[1] While he does not mention Jackson, Defendant does cite a number of cases in support of his argument for a mistrial. These cases are distinguishable. See, e.g., Chanthadara, 230 F.3d at 1251–54 (trial court made a "sweeping denunciation of Mr. Chanthadara's defense"); United States v. Blanchard, 542 F.3d 1133, 1144–54 (7th Cir. 2008) (trial court allowed prosecution to introduce the court's own prior "judicial testimony" denouncing witness as "deceptive" and "less than credible"); United States v. Filani, 74 F.3d 378, 385–87 (2d Cir. 1996) (trial court "inappropriately intruded as an advocate during trial" by substantively challenging defendant's testimony over a dozen times and by interfering "repeatedly with the
(continued...)

7

Defendant next asserts the district court mentioned in open court a number of explanations for AP's reluctance to testify, all of which communicated to the jury the court's belief in AP and conflicted with Defendant's theory that AP was lying—e.g. "this is probably scary"; "a lot of strangers [are] looking at you"; "it's a formal setting"; "it's difficult perhaps to describe something that's intimate." Yet again, we disagree, for the same reasons discussed above. That is, AP did *not* show a general reluctance to testify, and none of the court's statements conveyed a belief in AP's credibility. For example, testifying in court can be a difficult and scary experience regardless of whether one is telling the truth. Indeed, a strong argument can be made that taking the stand intending to fabricate an entire story is much *more* difficult and scary. As to the district court's insinuation that something "intimate" occurred, an expert testified at trial that sperm found on the t-shirt worn by AP during the encounter matched Defendant's DNA. The probability that the sperm came from someone other than Defendant, the expert testified, was 1 in 1.2 trillion. Defendant also told the FBI he had touched AP's pubic hair, a confession played in court. As such, any argument that nothing intimate at all had occurred is absurd, and the court was well within its discretion to use this term.[2] Moreover, the district

_____

[1](...continued)
defense counsel's cross-examination of witnesses").

[2] At trial, defense counsel argued the court's use of "intimate" was not appropriate because the jury did not have to accept Defendant's FBI admission as true, given the questionable circumstances of the interrogation. Even so, this in no
(continued...)

8

court's use of the term in no way invalidated Defendant's primary defense, which was that he used no force and issued no threats.

Finally, Defendant argues the district court's ameliorating instruction to the jury did not alleviate the prejudice because the court's earlier interventions were just "too powerful." The district court, Defendant contends, pronounced "on the credibility of a key government witness," placing a "very heavy fist [] on the scales of justice, tipping the balance firmly in the government's favor." Def's Op. Br. at 38 (quoting United States v. Blanchard, 542 F.3d 1133, 1151–52 (7th Cir. 2008)). As we stated above, the court's contested statements did no such thing; indeed, they were not errors at all. Defendant's first argument fails in its entirety.

## III.

Defendant's second argument concerns a jury instruction the district court gave in relation to AP's testimony. At trial, defense counsel attempted to demonstrate that the prosecution coached AP. While AP admitted on cross-examination to meeting with the prosecution four or five times, the only thing she testified to being told was that it was okay to cry if she felt like crying. On re-direct, she testified no one told her specifically what to say or what to emphasize, other than

---

[2](...continued)
way addresses the compelling DNA evidence, which Defendant himself acknowledges "strongly supports the notion that [AP] and Mr. Begay engaged in sexual conduct." Def's Op. Br. at 33; see also id. at 46 ("[T]he DNA evidence strongly indicated [AP] and Mr. Begay engaged in sexual conduct.").

that she needed "[t]o tell the truth."  In its closing argument, defense counsel provided roughly three bases for the assertion that AP had been coached:  first, AP could not have on her own come up with several phrases she used—for example, "That was the day that changed my life"; second, AP's numerous pre-trial meetings with the prosecution indicated she "knew what the questions were going to be"; third, the prosecutor's leading questions and refreshing of AP's memory were just an extension of prior coaching.

Prior to closing arguments, the district court gave the jury the following instruction, which the prosecution had proposed: "An attorney has the right to interview a witness for the purpose of learning what testimony the witness will give. The fact that the witness has talked to an attorney does not reflect adversely on the truth of such testimony."  Defense counsel objected in writing that this instruction was ambiguous and an "incorrect statement of law" because "talking to or refusing to talk to an attorney can show the bias of a witness."  He later added at a bench conference that the instruction was not a pattern Tenth Circuit instruction, it was an incomplete statement of the law, and the gist of the instruction was contained in the other instructions.

"We review de novo whether a district court's jury instructions correctly stated the governing law."  Pratt v. Petelin, 733 F.3d 1006, 1009 (10th Cir. 2013).  On appeal, however, Defendant does not argue the instruction was an incorrect statement of law.  Rather, he contends the instruction was not "balanced"; that is, it embraced

10

the prosecution's narrative over the defense theory that the prosecution coached AP. We review this type of argument—that which contests "a district court's decision to give a particular jury instruction"—for abuse of discretion. Ryan Dev. Co. v. Ind. Lumbermens Mut. Ins. Co., 711 F.3d 1165, 1171 (10th Cir. 2013) (citation omitted). When a party fails to object to an instruction, however, or when it objects on a different basis than argued on appeal, we review for plain error only. See Fed. R. Crim. P. 30(d); United States v. Knight, 659 F.3d 1285, 1287 (10th Cir. 2011).

Here, the Government argues for plain error review because Defendant did not object at trial to the instruction's lack of balance. In reply, Defendant contends his trial objections center around the same argument he is making now, which is that the instruction improperly "eviscerated his contention that the coaching of [AP] called [her] credibility into question." This is a thorny question. On the one hand, the Government is correct that Defendant never mentioned a lack of balance before the district court. Neither did Defendant propose an additional instruction or language to add any balance. On the other hand, Defendant did argue that the instruction was an "incomplete statement of law," which in this context seems to convey roughly the same idea as unbalanced—that is, the instruction did not sufficiently explain the area of law, disfavoring one side in particular. Regardless, we need not decide this issue because, giving Defendant the benefit of the doubt, the district court's inclusion of the instruction was not even an abuse of discretion.

A district court's "decision is an abuse of discretion only if it is 'arbitrary,

capricious, whimsical, or manifestly unreasonable.'"  United States v. Combs, 267

F.3d 1167, 1176 (10th Cir. 2001) (citation omitted).  Defendant in essence asks us

to find the inclusion of a *correct* statement of law to be arbitrary, capricious,

whimsical, or manifestly unreasonable.  Such a request leaves Defendant with quite

a hill to climb.  In an attempt to summit this lofty peak, however, Defendant cites

only one case explicitly dealing with "unbalanced" jury instructions.[3]  See United

States v. Dove, 916 F.2d 41 (2d Cir. 1990).  As Dove does not come from the Tenth

Circuit or the Supreme Court, the district court probably cannot have abused its

discretion by not following it.  Regardless, Dove is easily distinguishable.

In Dove, the Second Circuit reversed a district court because it issued two

unbalanced instructions in a bank robbery trial.  The first instruction involved

identifying the defendant.  At trial, two witnesses to the robbery testified the robber

was not in the courtroom, even though they had both tentatively identified the

defendant in a photo lineup.[4]  The court then instructed the jury as follows:

> The government has the burden of proving [the defendant's] identity as
> the perpetrator beyond a reasonable doubt.  In this connection, it is not
> essential that a witness be able to identify a defendant in open Court or
> be free from doubt as to the correctness of her identification of the

---

[3] Defendant cites several other cases, but none of them explicitly discuss unbalanced instructions or are otherwise on point.  For example, the Fifth Circuit in United States v. McCracken, 488 F.2d 406, 414 (5th Cir. 1974), dealt with "repetitious" instructions, not unbalanced ones.  Moreover, the Fifth Circuit eventually upheld the disputed  instructions, which does not help Defendant here.

[4] Interestingly, one witness even "pointed to a member of the jury as the individual who looked most like the robber."  Id. at 43.

defendant by other means. However, if you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find him not guilty.

Id. at 44. The Second Circuit held this instruction "was unbalanced because it instructed the jury as to how the witnesses' inability to identify the defendant in the courtroom might bear on guilt without indicating how this rather significant evidence might bear on innocence." Id. at 45. The second instruction involved direct and circumstantial evidence. The court erred in explaining the difference between the two, the Second Circuit held, by using a hypothetical that assumed guilt and "merely instructed how to look for evidence of that guilt." Id. at 46.

Dove is first distinguishable because the defendant in Dove asked for (and was denied) additional language that would balance the first disputed instruction, id. at 44, whereas Defendant Begay did not propose any additional language. Second, and most significantly, the Second Circuit in Dove emphasized multiple times its holding was based on the "unusual" facts of the case—facts that are not present here. For example, the Second Circuit noted that "[v]irtually all of the circumstantial evidence pointed towards the possibility of innocence." Id. at 46. And a "criminal defendant," the Second Circuit held, "is entitled to instructions relating to his theory of defense, for which there is *some foundation in the proof . . . .*" Id. at 47 (emphasis added); see also Pratt, 733 F.3d at 1009 ("[A] party is entitled to an instruction on his theory of the case if it is supported by competent evidence."). Here, Defendant provided only speculation to support his assertion that the prosecution coached AP.

13

AP, on the other hand, testified the prosecution never told her anything specific to say in court; rather, she was instructed again and again to "tell the truth." Thus, the court would not have been required to balance this instruction, even under Dove.[5] The instruction was undisputedly a correct statement of law and the court's decision to include it was not arbitrary, capricious, whimsical, or manifestly unreasonable.

IV.

Defendant's third argument on appeal concerns statements a prosecutor made during the rebuttal portion of closing arguments. The Assistant United States Attorney (AUSA) began her opening statement by saying, "They walk among us, people like Stanton Begay, people who take. They take from the vulnerable; they take from the weak. . . . They take without remorse." Defense counsel objected that this was not a factual opening statement, and the court sustained the objection, instructing the AUSA to limit comments to the evidence. Despite this, the same AUSA began her closing rebuttal by saying, "When we began this trial, I told you this case was about people who walk among us, who take from others, who take from the vulnerable, who take from the weak, and who take without remorse." Defense counsel again objected, arguing this was "a play to sympathy and prejudice . . . to

---

[5] Furthermore, we note the instruction did not foreclose Defendant from arguing that AP was coached. All the instruction said was that the "fact that the witness has *talked* to an attorney does not reflect adversely on the truth of such testimony." (emphasis added). Nothing prohibited Defendant from asserting in closing that AP had done more than merely "talk" to the prosecution and that the instruction did *not* require the jury to find no coaching had occurred.

14

societal woes, not to the evidence of this case." Without explanation, the court overruled the objection. Defendant did not move for a mistrial.

Defendant argues the "people who walk among us" rebuttal remarks constituted prosecutorial misconduct. When a defendant objects to a prosecutor's remark but does not move for a mistrial, and when the district court overrules the objection—as occurred here—our standard of review for prosecutorial misconduct is de novo. See United States v. Taylor, 514 F.3d 1092, 1095–97 (10th Cir. 2008) (citing United States v. Pulido-Jacobo, 377 F.3d 1124, 1134 (10th Cir. 2004)). De novo review in this context consists of a two-step process. Pulido-Jacobo, 377 F.3d at 1134. First, we determine whether the prosecutor acted improperly; second, we determine whether the error was "harmless beyond a reasonable doubt." Id. (citation omitted); see also United States v. Ramirez, 63 F.3d 937, 944 (10th Cir. 1995).

We assume without deciding that the AUSA's rebuttal statements were improper. We hold, however, that they were harmless beyond a reasonable doubt. In United States v. Rogers, 556 F.3d 1130 (10th Cir. 2009), a prosecutor commented during closing argument on the "overall damage to the community inflicted by the drugs and prostitution at the hotel" where police apprehended the defendant. Id. at 1143. Prosecutors, we stated, "are not permitted to incite the passions of the jury by suggesting they can act as the 'community conscience' to society's problems." Id. Assuming the prosecutor's narrative was improper, however, we found the error was harmless beyond a reasonable doubt for the following reasons:

15

> First, as we have already discussed, the Government presented a very strong case against Defendant. Second, the large majority of the prosecutor's closing argument is supported in the record . . . . Third, the jury was properly instructed that closing arguments are not evidence. Finally, the prosecutor's narrative was a small piece of a lengthy closing argument, and was simply not egregious enough 'to influence the jury to convict on grounds other than the evidence presented.'

Id. (internal citations omitted).

Rogers controls here. First, the prosecution "presented a very strong case against Defendant." AP testified Defendant trapped her and forced himself on her sexually. Sperm matching Defendant's DNA was found on AP's shirt. A subsequent medical exam revealed bruises on AP's left jaw and right neck. Three out of four vaginal swabs from AP tested positive for blood. Defendant initially lied to the FBI about sexual contact with AP; he later admitted he had touched AP's pubic hair. Theresa Vigil, a nurse, testified that AP called her the night of the incident, upset, scared, and crying, and told Vigil that Defendant "made me suck his dick." The Court could go on.[6] Second, Defendant objects to nothing else in the closing argument, nor does anything appear objectionable. And while the district court inexplicably did not sustain Defendant's only objection, the AUSA still immediately moved on and stuck to the facts of the case for the remainder of her rebuttal. She

---

[6] This is not to say Defendant's defense was weak. Rather, Defendant vociferously argued, among other things, that AP was not credible and that a forcible rape occurring in a small trailer home without alerting multiple persons present was implausible. This does not change, however, the compelling nature of the evidence the prosecution put forth.

16

said no more about the "people who walk among us" or anything remotely similar, nor did the prosecution discuss broader societal issues in its primary closing argument. Finally, the district court properly instructed the jury beforehand "that closing arguments are not evidence." We will not overturn a jury's verdict based on this error, which was harmless beyond a reasonable doubt.[7]

     AFFIRMED.

                         Entered for the Court,


                         Bobby R. Baldock
                         United States Circuit Judge

---

[7] Defendant also argues we should reverse his conviction because of cumulative error. For cumulative error, we ask whether the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Rosario Fuentez, 231 F.3d 700, 709 (10th Cir. 2000) (citation omitted). Here, the district court committed only one error, at most. Thus, cumulative error is an impossibility.