UNITED STATES of America, Plaintiff, Appellee,

v.

Francisco Rodrigo GARCIA, Defendant, Appellant.

No. 89–1955.

United States Court of Appeals, First Circuit.

Heard May 7, 1990.

Decided June 19, 1990.

---

Rachel Brill, Old San Juan, P.R., by appointment of the Court, for defendant, appellant.

Carlos A. Pérez, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. López-Romo, U.S. Atty., Hato Rey, P.R., was on brief, for plaintiff, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

PER CURIAM.

Francisco Rodrigo Garcia appeals from a judgment of conviction of the United Stated District Court for the District of Puerto Rico on three counts of possession with intent to distribute and import cocaine un-

der 21 U.S.C. §§ 841(a)(1), 952 and 955, and 18 U.S.C. § 2. Appellant was sentenced to prison terms of 160 months for each count, to be served concurrently. We affirm.

## FACTS

On December 13, 1989, after the arrival of a commercial airline flight from Colombia, customs inspectors at the Luis Muñoz Marin Airport screened and interviewed passengers for evidence of illegal drugs. They stopped appellant and requested to see his passport, boarding pass and airline ticket. A customs inspector noticed that the airline ticket showed that appellant had checked four pieces of luggage but only had one claim stub. Appellant, a musician, stated he was just carrying one suitcase with his clothes and an accordion. He was travelling with a woman who was later indicted with appellant.[1]

Thereafter, the customs inspectors went to check the in-transit luggage where they found a music amplifier with the claim ticket number corresponding to appellant's suitcase. After perceiving a strong smell of glue—a technique commonly used to confuse drug sniffing dogs—a search of the amplifier was made, revealing a white powdery substance that, when field tested, reacted positive for cocaine. A second amplifier was found with a claim stub number consecutive to the first one.

Customs officials then proceeded to read appellant and his companion their rights, and took them to separate rooms. While inside this room, Garcia voluntarily signed a sworn statement. He also informed custom officials that the cocaine was not his, and stated that although he was not sure, he believed there were at least 21 kilograms of cocaine. (The actual amount of cocaine was 20.78 kilograms). He claimed that while at the airport in Colombia, a friend of his had approached the couple and asked them to carry the two amplifiers.

Garcia and his female companion were both charged and both pled not guilty.

Garcia moved to suppress the evidence collected during the luggage search and the statements made to the customs officials while at the airport. A hearing was held and the motions were denied. The jury found Garcia guilty on all three counts and acquitted the woman.

## DISCUSSION

### I. *Illegal search*

Appellant argues that he was not subjected to a border search, but rather was confronted and seized by authorities at the airport based upon an unsupported drug courier profile. He further alleges that there was insufficient cause for the nonconsensual search and seizure. This claim is based on the allegations that there was no intent on appellants part to enter into the United States and that he had no knowledge of the in-transit stop in Puerto Rico.

It is well settled that such in-transit searches are considered border searches. *E.g., United States v. Levy*, 870 F.2d 37 (1st Cir.1989). Clearly, the United States Customs Service has the authority to routinely search, without a warrant or suspicion, baggage and persons in-transit from one foreign country to another. It is also authorized to decline to immunize international travelers who pass through this country however briefly. *United States v. Muench*, 694 F.2d 28 (2d Cir.1982). Furthermore, the fact that appellant did not know that the plane would stop in the United States is immaterial. *United States v. Franchi*, 838 F.2d 585 (1st Cir. 1988); *see also United States v. Montoya*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

Irrespective of his in-transit status or his lack of knowledge that a stop would be made in the United States, the search conducted of appellant and his luggage is clearly within the scope of those labeled "border crossing searches." The level of suspicion to search the persons and/or the

---

1. Allegedly, the couple met in a Bogotá music festival some months earlier and were on their way to Europe. Both testified that she was not involved in the checking of the pieces of luggage in question, and that she did not know the contents of the amplifiers found by the inspectors.

luggage of persons crossing borders is minimal, and was clearly met in this case.

## II. *Garcia's statements*

■ Appellant avers that any statement made by him was the product of the inherent coercion present in any airport encounter with officials. He also alleges that under the circumstances, his statements before or after the waiver were neither spontaneous nor voluntary. He further contends that the government failed to prove that appellant voluntarily signed the waiver form. Finally, he avers that the court's failure to suppress appellant's post arrest statements was not harmless error.

The evidence presented at trial established that the initial questioning was conducted as a routine Customs Service stop after deplaning. It is undisputed that once appellants interrogation proceeded to the point of seeking incriminating evidence, the customs officials read him his rights in Spanish, his native language, and made an effort to ensure that he understood them. We agree that the record is devoid of any suggestion that the agents resorted to physical or psychological pressure and/or that they asked appellant the amount of cocaine inside the amplifiers. The district court committed no reversible error.

■ Even if we were to find that the court erred, Rule 52(a) provides that any error which does not affect substantial rights shall be disregarded. Fed.R.Crim.P. 52(a). The rest of the evidence presented against appellant is so overwhelming that even if error were to have been committed, it would be deemed harmless. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Owens v. Treder*, 873 F.2d 604 (2d Cir.1989); *United States v. Alexander*, 835 F.2d 1406 (11th Cir.1988).

## III. *Sufficiency of the evidence*

■ Appellant claims that, even in the light most favorable to the government, the evidence presented concerning knowledge of the cocaine by either him of his female companion was minimal. He further alleges that their testimony was entirely credible and consistent. This, appellant claims, is reinforced by the woman's acquittal.

■■ Credibility is an issue to be resolved by the jury and the court must defer to the jury's findings. *United States v. Rivera Rodriguez*, 808 F.2d 886, 889 (1st Cir.1986). It is up to the jury, to determine which of the various choices or interpretations of evidence is credible. *United States v. Smith*, 680 F.2d 255 (1st Cir. 1982). Upon review of the sufficiency of the evidence, an appellate court will not deal directly with credibility but instead will review the evidence considered as a whole, including all inferences that may be reasonably drawn therefrom. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The evidence reveals that appellant was on board the flight from Colombia. There is *no* dispute that the name tag attached to the amplifier was the name tag on appellant's suitcase, that the claim ticket for his suitcase was attached to the excess baggage ticket with a second one corresponding to the amplifier, and that appellant had checked four pieces of luggage. Finally, illegal contraband was found inside his luggage. If the jury credited this evidence and the inferences arising therefrom, it could infer guilt. Because the jury is free to choose among reasonable constructions of the evidence such as that described above, we conclude that the evidence was sufficient to establish guilt beyond a reasonable doubt. *See United States v. Milton*, 892 F.2d 134, 137 (1st Cir.1989); *United States v. Costa*, 890 F.2d 480, 481 (1st Cir.1989); *United States v. Rivera Rodriguez*, 808 F.2d at 889.

## IV. Acceptance of Responsibility

■■ Appellant argues that because he admitted responsibility for his criminal actions before the sentencing judge, appellant should have been allowed a two point downward adjustment under the sentencing guidelines.

Section 3E1.1 of the sentencing guidelines provides for a two point reduction in

offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The district court's "inquiry into acceptance of responsibility is necessarily factbound," *United States v. Royer*, 895 F.2d 28, 30, (1st Cir.1989), and its decision to forgo a reduction on this ground will not be overturned unless clearly erroneous. *Id.* at 29–30; *see also United States v. Mata–Grullón*, 887 F.2d 23, 24 (1st Cir.1989) (per curiam); *United States v. Zayas*, 876 F.2d 1057 (1st Cir.1989). Downward adjustments for acceptance of responsibility are not automatically to be conferred upon every accused who pleads guilty. *Mata–Grullón*, 887 F.2d at 24. In this case appellant has yet to truthfully admit and describe his involvement in the offenses of conviction. There was ample basis to withhold the adjustment; acceptance of responsibility, after all, "necessitates candor and authentic remorse—not merely a pat recital of the vocabulary of contrition." *Royer*, 895 F.2d at 30.

*Affirmed.*