**UNITED STATES, Appellee,**

v.

**Jaime URICOECHEA–CASALLAS, Defendant, Appellant.**

**No. 90–1717.**

United States Court of Appeals, First Circuit.

Heard May 5, 1991.

Decided Oct. 11, 1991.

Norberto Colon, by appointment of the Court, for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., and Ernesto Hernandez–Milan, Asst. U.S. Atty., were on brief for appellee.

CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

TORRES, District Judge.

This is an appeal by Jaime Uricoechea–Casallas ["Uricoechea"] of his conviction for various drug trafficking offenses and of the sentence imposed by the District Court. It requires us to consider the admissibility of evidence seized in a "customs search" of Uricoechea's luggage and whether Uricoechea was entitled to reductions in his offense level for "acceptance of responsibility" and/or for being a "minor participant" within the meaning of §§ 3E1.1(b) and/or 3B1.2(b) of the federal Sentencing Guidelines. For reasons hereinafter stated, we find Uricoechea's arguments to be frivolous and, therefore, affirm both his conviction and sentence.

## BACKGROUND

Uricoechea is a resident of Bogota, Colombia. On October 28, 1989, he was a passenger on an Iberia Airlines flight from Bogota to Madrid, Spain via the Luis Munoz Marin International Airport in San Juan, Puerto Rico. When the plane landed in San Juan, the passengers disembarked and waited in the "in-transit" passengers' lounge. During that time, United States Customs Inspectors boarded the aircraft for the purpose of identifying suspicious luggage contained in the baggage hold. One item included in that category was an unusually heavy garment bag bearing a claim tag with Uricoechea's name on it.

* Of the District of Rhode Island, sitting by designation.

The garment bag was removed from the aircraft and placed on the tarmac where inspectors probed the sides of the garment bag with a screwdriver. The probing disclosed a white powdery substance that a field test indicated was cocaine. The inspectors then cut open the sides of the bag and found approximately one thousand, one hundred and thirty-six grams of cocaine concealed in its metal frame.

When Uricoechea attempted to reboard the plane, he was arrested and searched. In his wallet, inspectors found $775 in cash and three packets containing a white powdery substance which field tests indicated was cocaine.

According to government agents, Uricoechea gave several different explanations for the presence of cocaine in his luggage. At the time of his arrest, he told the arresting officer that, due to financial difficulties, he had purchased the cocaine and planned to sell it in Spain to a woman known only as Isabelle. Two days later, Uricoechea told another agent that he was acting only as a courier and had instructions to deliver the cocaine to an unidentified person in Spain. At trial, Uricoechea denied making either of those statements and testified that he had been coerced into making the trip by a Mr. Meira who had loaned him money and asked him on several occasions to deliver cocaine to Spain. According to Uricoechea, Meira threatened Uricoechea's life if Uricoechea did not make the trip.

Uricoechea was convicted of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); importing cocaine into the customs territory of the United States in violation of 21 U.S.C. § 952(a); and bringing cocaine into the customs territory of the United States aboard an aircraft without listing it on the cargo manifest in violation of 21 U.S.C. § 955. The District Court imposed concurrent sentences of 78 months on each count.

Uricoechea now seeks to have his conviction vacated on the ground that the evidence found in his garment bag and wallet should have been excluded because it was seized pursuant to an unlawful search. Al-ternatively, he contends that the District Court erred in calculating his sentence by failing to award two level reductions in his offense level for acceptance of responsibility and for being only a minor participant as set forth in §§ 3E1.1(b) and 3B1.2(b) of the federal Sentencing Guidelines.

## DISCUSSION

### I. THE SEARCH OF THE GARMENT BAG

It is well established that routine border inspections do not violate the Fourth Amendment prohibition against unreasonable searches even when conducted without a warrant or probable cause. *United States v. Garcia*, 905 F.2d 557, 559–60 (1st Cir.1990); *United States v. Braks*, 842 F.2d 509, 511–12 (1st Cir.1988). It is equally well established that searches of passengers at Luis Munoz Marin Airport are border searches. *Garcia*, 905 F.2d at 559; *United States v. Mejia–Lozano*, 829 F.2d 268, 271 (1st Cir.1987); *United States v. McKenzie*, 818 F.2d 115, 117, 119–20 (1st Cir.1987).

Uricoechea does not challenge these principles. Instead, he advances two arguments in support of his contention that the search of the garment bag was illegal. First, he asserts that Customs Regulations do not authorize searches of luggage that is inside an aircraft's cargo hold. Second, he claims that, under the circumstances, agents were required to seek his consent before opening the bag. We find these arguments to be meritless.

The applicable Customs Regulation provides that "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer." 19 C.F.R. § 162.6 (1990). Uricoechea argues that luggage that is still within the baggage compartment of an airplane is not "in the Customs territory of the United States." However, such an interpretation is inconsistent with both the language of the Regulations and our holding in *United States v.*

*Franchi–Forlando,* 838 F.2d 585 (1st Cir. 1988).

In providing for searches "in the Customs territory of the United States," the Regulations merely limit the authority to search to certain geographical areas within the territorial jurisdiction of the United States. The Regulations define "Customs territory of the United States" to include "only the States, the District of Columbia and Puerto Rico." 19 C.F.R. § 101.1(e). Neither the Regulations nor common sense support the conclusion that containers located within those geographic areas are not "in the Customs territory of the United States" merely because they are stored in an aircraft or other vehicle. Indeed, the Regulations specifically allow inspectors to board an aircraft for the purpose of searching it. They provide that "[a] customs officer may stop any [v]ehicle and board any aircraft arriving in the United States from a foreign country for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft." *Id.* at § 162.5.

The fact that the container's ultimate destination was another country and that there was no intent to unload it in the Customs territory of the United States is inconsequential. In *Franchi–Forlando* we upheld a search of in-transit luggage under circumstances almost identical to those presented by the instant case. In so doing, we stated that 19 C.F.R. § 162.5 "allows searches of aircraft that stop in the United States customs territory only briefly and then travel elsewhere. *Such aircraft may keep luggage subject to search in their holds,* perhaps mixed with other packages or freight." *Franchi–Forlando,* 838 F.2d at 588 (emphasis added).

■ Uricoechea's argument that the agents were required to seek his consent to search before probing his garment bag is equally meritless. It is true that the Regulations applicable to passengers *entering* the United States forbid customs inspectors from opening baggage unless the owner refuses to do so. 19 C.F.R. § 148.21(a). However, in *Franchi–Forlando* we specifically held that regulation inapplicable to *in-*

*transit* passengers. *Franchi–Forlando,* 838 F.2d at 587–88 (construing 19 C.F.R. § 148.21).

In short, it is clear that Uricoechea's garment bag was subject to search when his plane landed in San Juan and that, under the circumstances, customs inspectors were not required to obtain his consent before opening it.

## II. THE SEARCH INCIDENT TO ARREST

■ Uricoechea also challenges the admissibility of the cocaine found in his wallet on the ground that it was seized pursuant to an unlawful arrest. Specifically, he contends that customs agents lacked probable cause to arrest him.

We reject that contention for two reasons. First, the record clearly demonstrates the existence of probable cause to arrest Uricoechea. As we said in *United States v. Figueroa,* 818 F.2d 1020 (1st Cir. 1987), the test is "whether, at the moment the arrest was made, ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *Id.* at 1023 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Probable cause must be evaluated in light of the totality of circumstances. Moreover, in order to demonstrate the existence of probable cause, the government need not present the quantum of proof necessary to convict. *United States v. Maguire,* 918 F.2d 254, 258 (1st Cir.1990) (citing *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983)); *United States v. Jorge,* 865 F.2d 6, 9 (1st Cir.1989)).

If an arrest is lawful, the arresting officers are entitled to search the individual apprehended pursuant to that arrest. *United States v. Leal,* 831 F.2d 7, 10 (1st Cir.1987). The permissible purposes of such a search include preservation of evidence, *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), and seizure of destructible contraband, *United States v. Bautista,* 731 F.2d 97, 99 (1st Cir.1984).

In this case, the agents clearly had probable cause to arrest Uricoechea. The field test of the white powder in the garment bag bearing his claim tag indicated the presence of cocaine. Furthermore, Uricoechea never denied ownership of the bag. Consequently, the agents had ample justification for searching Uricoechea, examining his wallet and seizing the contraband concealed in it.

■ Even without a finding of probable cause, the search of Uricoechea's person would be lawful. As already noted,[1] probable cause is not required to conduct routine border inspections or customs searches. This Court has adopted the "no suspicion" and "reasonable suspicion" standards for reviewing such searches. Under the "no suspicion" standard applicable to routine border searches, a customs officer may search an individual based on " 'subjective suspicion alone, or even on random basis.' " *United States v. Braks*, 842 F.2d 509, 514 (1st Cir.1988) (quoting *United States v. Stornini*, 443 F.2d 833 (1st Cir.), *cert. denied*, 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971)). Where a search is not routine (e.g. a strip search), we have applied the "reasonable suspicion" standard. *United States v. Wardlaw*, 576 F.2d 932 (1st Cir.1978). Under this standard, a border search of an individual's person is lawful if the government can "demonstrate some objective, articulable facts that justify the intrusion as to the particular person and place searched." *Braks*, 842 F.2d at 513 (citing *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir.1978)). Under either of these standards the search of Uricoechea's person would have been permissible here even had the authorities lacked probable cause to arrest him.

---

**1.** *See supra* pp. 164–165.

**2.** The sentencing hearing on July 13, 1990 dealt primarily with the issue of acceptance of responsibility. After resolving that issue, the following exchange occurred:

THE COURT: Is there any other matter as to the Pre-Sentence Report that you wish to raise, Mr. Colon [counsel for the defendant], on behalf of your client?

MR. COLON [counsel for the defendant]: *No your Honor*. There was just a clerical mistake concerning a name.... That is the only other objection which is a clerical one.

## III. THE SENTENCE

■ As previously noted, Uricoechea challenges his sentence on two grounds. First, he argues that he should have been awarded a two-level reduction in offense level, under United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2(b), because he was merely a courier and, therefore, a minor participant in the offenses for which he was convicted. Second, he asserts that the District Court erred in not granting a two-level reduction for acceptance of responsibility.

The short answer to the first contention is that Uricoechea's failure to raise the issue in the District Court precludes him from doing so, now. "[A]n issue not presented to the trial court cannot be raised for the first time on appeal." *Figueroa*, 818 F.2d at 1025; *see also United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989) ("It has long been the practice in this circuit that an issue not presented in the district court will not be addressed for the first time on appeal."). This rule applies equally to claims or arguments regarding the factors to be taken into account in sentencing. *United States v. Argentine*, 814 F.2d 783, 790–91 (1st Cir.1987).

The transcript of the sentencing hearing reveals that Uricoechea was offered ample opportunity to challenge the computation of his offense level and failed to raise any question regarding his alleged role as a "minor participant."[2] Uricoechea's failure to assert this claim at his sentencing hearing forecloses him from raising it here.

■ Our inquiry into whether Uricoechea was entitled to a two-level reduction

---

THE COURT: Thank you. Now, Mr. Uricoechea, in addition to the objections raised by your attorney which he has circumscribed to the matter of the acceptance of responsibility which was denied you, do you have any other matter to raise before the Court as far as objections or amendments to the report prepared by the Probation Officer that you have discussed with Mr. Colon?

THE DEFENDANT: *No. Nothing.*

THE COURT: Mr. Colon, do you know of any reason why sentence should not be imposed upon Mr. Uricoechea at this time?

for "acceptance of responsibility" must begin with an examination of U.S.S.G. § 3E1.1(a) which provides for such a reduction "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...."

■ The burden is on the defendant to demonstrate that he or she should have received the reduction. *United States v. Bradley*, 917 F.2d 601, 606 (1st Cir.1990). The entry of a guilty plea is not, by itself, sufficient to establish acceptance of responsibility. U.S.S.G. § 3E1.1(c), comment. (n. 3).[3] By the same token, although failure to plead does not automatically bar a reduction for acceptance of responsibility, generally speaking "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2).

■ The ultimate question is whether the defendant has accepted responsibility for his or her conduct "with candor and authentic remorse." *United States v. Wheelwright*, 918 F.2d 226, 229 (1st Cir. 1990) (quoting *U.S. v. Royer*, 895 F.2d 28, 30 (1st Cir.1990)). "Acceptance of responsibility, in the final analysis, 'necessitates candor and authentic remorse—not merely a pat recital of the vocabulary of contrition.'" *Bradley*, 917 F.2d at 606 (quoting *Royer*, 895 F.2d at 30).

In this case, the District Court found that Uricoechea failed to accept responsibility with candor and authentic remorse. In determining whether that finding was erroneous, we must bear in mind that because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility ... the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5). Thus appellate courts are reluctant to disturb the trial court's decision because it had the opportunity to observe the defendant's demeanor, judge the defendant's credibility, and evaluate the defendant's acceptance of responsibility in a live context against the backdrop of the case as a whole. *Bradley*, 917 F.2d at 606.

In this case, the District Judge's determination is amply supported by the record. As previously noted, there was evidence that Uricoechea provided three different versions of the circumstances leading to his arrest. Furthermore, the District Judge had an opportunity to observe Uricoechea's demeanor and evaluate his credibility when he testified at trial. Therefore, the District Judge's specific finding that Uricoechea's expressions of remorse were less than genuine is entitled to great weight.

Moreover, Uricoechea's persistence in claiming that he was coerced into transporting the cocaine is somewhat inconsistent with his alleged acceptance of responsibility. The essence of the coercion claim is that he is not responsible for his conduct

---

MR. COLON: *No, your Honor. The only point was already pointed to the Court.*
THE COURT: Mr. Uricoechea, do you know of any reason why I should postpone this sentencing hearing for some other day?
....
All I want to know now is if there is anything else in that Pre–Sentence Report, other th[a]n what was raised by your attorney, that you wish to bring up as an objection or as a modification? Because the matter you have raised—your claims of candidness and sincerity, I have already considered and I have already ruled upon.... Now, I ask you if there is any other matter in this Pre–Sentence Report that you wish to raise in addition to what your attorney has raised?
THE DEFENDANT: *Nothing.*
*United States v. Uricoechea Casallas*, Cr. No. 89–351, Record at 12–15 (D.P.R. July 13, 1990)

(sentencing hearing) (emphasis added) [hereinafter, "Sentencing Hearing Transcript"].

**3.** Among the other factors to be considered are voluntary termination or withdrawal from criminal conduct or associations; voluntary payment of restitution prior to adjudication of guilt; voluntary and truthful admission to authorities of involvement in the offense and related conduct; voluntary surrender to authorities promptly after commission of the offense; voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; voluntary resignation· from the office or position held during the commission of the offense; and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n.1).

because he did not commit the acts in question voluntarily. Uricoechea cannot both have his cake and eat it by disclaiming responsibility for what he did and simultaneously expressing remorse for his acts. Even if he could, the trial judge made it clear that he did not believe Uricoechea's claim of coercion.

Briefly stated, Uricoechea failed to establish that he was entitled to a reduction in his offense level for acceptance of responsibility and is fortunate that the District Judge did not increase the offense level for obstruction of justice based on the false statements he made. *See* U.S.S.G. § 3C1.1, comment. (nn. 3(b)–3(c), 3(f)–3(h)).

### CONCLUSION

For all of the foregoing reasons, we hold that the District Court did not err in denying Uricoechea's motion to suppress the cocaine found in his garment bag and wallet. We also hold that the District Court properly applied the Sentencing Guidelines in calculating Uricoechea's sentence. Therefore, both the judgment of conviction and the defendant's sentence are affirmed.

JUDGMENT AFFIRMED.