56 F.3d 78
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David Lynn JOHNSON, Defendant-Appellant.
 No. 94-3246.
 United States Court of Appeals, Tenth Circuit.
 May 31, 1995.
 
 Before ANDERSON, ALDISERT,[2] and HOLLOWAY, Circuit Judges.
 
 
 1
 This case is before us a second time for review. In the first appeal we affirmed David Lynn Johnson's conviction for conspiracy and possession with intent to distribute phenyl-2-propanone (phenylacetone), but vacated his life sentence and remanded for resentencing. United States v. Johnson, 12 F.3d 1540 (10th Cir.1993). Mr. Johnson now appeals the sentence of 162 months imprisonment imposed on remand. He raises four issues: (1) Whether the government's motion for an upward departure constituted a breach of its agreement not to oppose a sentence at the low end of the guidelines, and if so, whether the breach requires us to vacate his sentence as a remedy; (2) Whether the district court erred in sentencing Mr. Johnson at the high end of the guideline range by considering factors already taken into account in determining that guideline range; (3) Whether the district court erred in not granting a two-level reduction in Mr. Johnson's base offense level for acceptance of responsibility; and (4) Whether the district court erred in enhancing Mr. Johnson's base offense level by two levels for his role in the offense. For the following reasons we affirm the sentence imposed by the district court.
 
 I.
 
 2
 Prior to resentencing, Mr. Johnson filed a motion for a new trial. On April 8, 1994, the day scheduled for the hearing on that motion, the parties reported to the court that they had reached an agreement disposing of the matter. There is no dispute over the terms of that agreement: Mr. Johnson would withdraw his motion for a new trial, in exchange for which the government would not oppose a sentence at the low end of an appropriately calculated guideline range.
 
 
 3
 The condition of an appropriately calculated guideline range is central to an understanding and analysis of Mr. Johnson's contention that the government breached the agreement. Throughout this case the major controversy with respect to sentencing has been over what range is appropriate. As the following colloquy at the court session on April 8, 1994, indicates, the issue was very much up in the air prior to resentencing:
 
 
 4
 MR. HOUGH: Your Honor, I don't know if--well, let me suggest that we have the Probation Department review and consider updating the pre-sentence investigation report because of the fact that I know defense counsel have hired an independent person to look at quantity amounts, and I know that the pre-sentence report as to these two defendants was prepared with the minimum mandatory of life in mind. I think, as a matter of caution for all parties, we ought to set this 30 days down the road and let the parties have a chance to look at and evaluate the PSI.
 
 
 5
 THE COURT: All right. We would ask that the pre-sentence be updated; the Probation Department look at it again, and we'll set the sentencing for about 30 days. I think that will take care of all of the situations. Hearing Tr. at 4-5 (April 8, 1994) (emphasis added).[3] Sentencing was initially set for May 13, 1994, then reset for July 6, 1994.
 
 
 6
 The probation office prepared and issued to the parties an updated presentence report (PSR) dated April 29, 1994. In essential respects it tracked the original PSR prepared in 1992, except for reducing the 360 months to life range (OL 37, CHC VI)[4] listed in the body of the 1992 PSR to a range of 324 to 405 months (OL 36, CHC VI). The latter was adjusted downward to 360 months at the high end due to the statutory maximum of 30 years. R. Vol. VI para. 67. Both the PSRs classified Mr. Johnson as a career offender.
 
 
 7
 The government reported that it accepted the new PSR as issued. R. Vol. VI para. 83. The defense raised numerous objections.
 
 
 8
 On the day scheduled for Mr. Johnson's resentencing, July 6, 1994, the probation office delivered to the parties an addendum to its PSR in which it dramatically altered its view of the applicable guideline range. Hearing Tr. at 11-12 (July 6, 1994). It abandoned its recommended offense level of 36 and criminal history category of VI, and recommended an offense level of 28, and a criminal history category of V, with a resulting guideline range of 130 to 162 months.[5] It ceased to classify Mr. Johnson as a career offender. It stated, however, that "[T]here could be an argument that [Mr. Johnson's] criminal history score underrepresents his prior criminal conduct." R. Vol. VI para. 108.
 
 
 9
 The government took exception to the addendum. On the same day, July 6, 1994, the government filed a motion for an upward departure to 30 years (the statutory maximum) on the ground that the guideline range newly recommended by the probation officer did not adequately take Mr. Johnson's past criminal conduct into account. At the resentencing proceeding that same day defense counsel objected to the government's motion on the merits and because it allegedly violated the government's agreement not to oppose a sentence at the low end of the proper range. Assistant United States Attorney Hough responded as follows:
 
 
 10
 Your Honor, we did agree to not oppose sentence at the low end of an appropriately calculated guideline range. It is our position, however, that the appropriately calculated guidelines range is substantially higher than what has been calculated in the PSIR because the criminal history category, as now calculated, does not adequately reflect the defendant's criminality.
 
 
 11
 Hearing Tr. at 13 (July 6, 1994).
 
 
 12
 The court rejected the government's argument, id. at 85-86, and adopted the recommendation of the United States Probation Office, 162 months, the top of the range for level 28, criminal history category V. Id. at 82.
 
 
 13
 Under the circumstances, we are satisfied that the government's motion and arguments went to a determination of the appropriate range, despite language in the motion itself that the departure requested was from the appropriate range. The motion was obviously hastily drafted, and contemporaneously clarified to the court as indicated above.
 
 
 14
 From the government's perspective, what was involved here was something like fifteen years of incarceration based on different ranges, not the two-and-one-half years difference between the low and high end of a particular range. The government clearly thought Mr. Johnson's criminality had been underclassified. From Mr. Johnson's standpoint, the term "appropriate range" in his agreement with the government could not reasonably have been understood by him as a bar to an argument by the government that the probation office was significantly off on the grid. See United States v. Hand, 913 F.2d 854, 856 (10th Cir.1989) (court must look to what the defendant reasonably understood); see also United States v. Robertson, 45 F.3d 1423, 1443 (10th Cir.1995) (finding government did not breach agreement where information in PSR was substantially different from what it was believed to be when the plea agreement was entered into).
 
 
 15
 Thus, while agreements may not be broken by the government with impunity, Santobello v. New York, 404 U.S. 257 (1971); United States v. Robertson, 45 F.3d 1423 (10th Cir.1995); United States v. Hand, 913 F.2d 854 (10th Cir.1990); United States v. Pogue, 865 F.2d 226 (10th Cir.1989); United States v. Greenwood, 812 F.2d 632 (10th Cir.1987); United States v. Reardon, 787 F.2d 512 (10th Cir.1986), we conclude that no agreement was broken here.
 
 II.
 
 16
 As indicated above, the district court sentenced Mr. Johnson at the top of the guideline range of 130-162 months (OL 28, CHC V). The offense level included a two-point increase for Mr. Johnson's role in the offense.
 
 
 17
 In the course of selecting a sentence at the top of the range, the district court referred to "the defendant's prior record, the offense conduct and his role in the offense." R. Vol. II at 84. Mr. Johnson contends that this reasoning amounts to double counting factors which were taken into account in determining the guideline range, and, therefore, resulted in the imposition of an unlawful sentence.
 
 
 18
 A defendant's right to appeal a sentence imposed by a federal court is governed by 18 U.S.C. 3742(a). Under that section, a sentence within the guidelines may not be appealed unless it is imposed in violation of law, or as a result of an incorrect application of the guidelines. 18 U.S.C. 3742(a)(1)-(2); United States v. Garcia, 919 F.2d 1478, 1479 (10th Cir.1990). Interpreting 3742(a) we have previously concluded that a district court's decision to impose a sentence at a particular point within the proper guideline range is not reviewable on appeal except for three very narrow exceptions: facial illegality, improper calculations, or clearly erroneous fact findings. Id. at 1481 (concluding court lacked jurisdiction to review defendant's claim that district court relied on improper factors in sentencing him to the top of concededly appropriate sentencing range). None of these exceptions are implicated in this case.
 
 
 19
 Furthermore, "[t]he Committee [did] not intend that the statement of reasons for a sentence within the guidelines become a legal battleground for challenging the propriety of a particular sentence." Id. at 1482 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 149, reprinted in 1984 U.S.C.C.A.N. 3182, 3262-63). Rather, "[t]he guidelines were intended to give some sentencing discretion to the district courts while encouraging those courts to communicate their reasons for the sentence to the defendants, the public, and those who have to deal with the defendants." Id. Allowing appellate review under the present circumstances would "frustrate both purposes, and would be contrary to our reading of 3742(a)." Id. Accordingly, we conclude that we are without jurisdiction to review the district court's reasons for sentencing Mr. Johnson to the top of the appropriate guideline range.
 
 III.
 
 20
 Mr. Johnson also contends that the district court erred in not granting a two-level reduction for acceptance of responsibility. Section 3E1.1(a) of the Sentencing Guidelines provides that a defendant's offense level for purposes of sentencing should be decreased by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG 3E1.1. Mr. Johnson argues that he is entitled to a reduction because: (1) he testified at trial regarding his involvement in the distribution of controlled substances and also acknowledged his involvement at the resentencing hearing; (2) he expressed remorse for his involvement at the sentencing hearing; and (3) he participated in post-conviction drug rehabilitation. See Appellant's Br. at 13-15.
 
 
 21
 Mr. Johnson must prove by a preponderance of the evidence that he is entitled to the sentence reduction. United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir.), cert. denied, 115 S.Ct. 227 (1994). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," USSG 3E1.1, comment. (n.1), our review of the trial court's finding must be highly deferential. United States v. Johnson, 911 F.2d 1394, 1402 (10th Cir.1990), cert. denied, 498 U.S. 1050 (1991). We review the district court's determination of acceptance of responsibility for clear error, United States v. Hoenscheidt, 7 F.3d 1528, 1531 (10th Cir.1993), and will disturb this determination only if it is without foundation. United States v. Amos, 984 F.2d 1067, 1071-72 (10th Cir.1993).
 
 
 22
 The adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial while denying the essential factual elements of guilt, is convicted, and only then admits guilt and remorse." USSG 3E1.1, comment. (n.2). Thus, it is only in "rare situations" that a defendant may deserve a reduction for acceptance of responsibility even though he goes to trial. Id.; Portillo-Valenzuela, 20 F.3d at 394; United States v. March, 999 F.2d 456, 463 (10th Cir.), cert. denied, 114 S.Ct. 483 (1993). This may occur, for example, where a defendant admits his factual guilt but goes to trial only to challenge the constitutionality or applicability of a statute. See USSG 3E1.1, comment. (n.2). The facts of this case, however, do not present one of those "rare situations."
 
 
 23
 The district court's finding that Mr. Johnson failed clearly to demonstrate acceptance of responsibility is amply supported by the record. Mr. Johnson has continuously denied that he contacted Agent Clark and offered Clark a pound of methamphetamine in exchange for drug-processing glassware. Although Mr. Johnson did eventually testify that he delivered phenylacetone to Agent Clark, he has always maintained that he did so based on fear and coercion, and that it was Clark's persistence that led to the transaction. Mr. Johnson also stated that there was no conspiracy between himself, his brother Robert, and Mr. Niedfeldt to sell a controlled substance.
 
 
 24
 Moreover, Johnson's persistence in claiming that he was coerced into selling phenylacetone is somewhat inconsistent with his alleged acceptance of responsibility. See United States v. Uricoechea-Casallas, 946 F.2d 162, 167 (1st Cir.1991). The essence of his coercion claim is that he is not responsible for his conduct because he did not commit the acts in question voluntarily. "[Mr. Johnson] cannot both have his cake and eat it by disclaiming responsibility for what he did and simultaneously expressing remorse for his acts." Id. at 168; see also United States v. Thomas, 870 F.2d 174, 176-77 (5th Cir.1989).
 
 
 25
 Based on our review, we cannot say that the district court's finding that Mr. Johnson failed to demonstrate acceptance of responsibility is clearly erroneous.
 
 IV.
 
 26
 Finally, Mr. Johnson asserts that the district court erred granting a two-level enhancement for his role in the offense. He claims that the evidence was insufficient to show that he was an organizer, leader, or manager. We accept the district court's factual findings on this point unless clearly erroneous. United States v. Robertson, 45 F.3d 1423, 1448 (10th Cir.1995); United States v. Mandilakis, 23 F.3d 278, 280 (10th Cir.), cert. denied, 115 S.Ct. 362 (1994); United States v. Lowder, 5 F.3d 467, 470 (10th Cir.1993). Under this standard, we will not reverse the district court finding unless it is "without factual support in the record, or unless after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made." Mandilakis, 23 F.3d at 280 (quoting United States v. Brown, 995 F.2d 1493, 1500 (10th Cir.), cert. denied, 114 S.Ct. 353 (1993)).
 
 
 27
 Pursuant to 3B1.1, a defendant's offense level may be increased if the defendant was an organizer, leader, manager, or supervisor in any criminal activity. See USSG 3B1.1. We have previously stated that "[k]ey determinants of the applicability of 3B1.1 are control or organization: the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Reid, 911 F.2d 1456, 1464 (10th Cir.1990) (internal quotations omitted), cert. denied, 498 U.S. 1097 (1991); see also United States v. Morgan, 936 F.2d 1561, 1574 (10th Cir.1991) (upholding district court's finding of organizer or supervisor where defendant "exercised any degree of direction or control over a subordinate in the criminal scheme"), cert. denied, 502 U.S. 1102 (1992); United States v. Backas, 901 F.2d 1528, 1530 (10th Cir.) ("In order to be a supervisor, one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity ...."), cert. denied, 498 U.S. 870 (1990).
 
 
 28
 The district court, responding to Mr. Johnson's objection to the two-level increase, stated: "The evidence in this case is overwhelming that David Johnson was the organizer and leader of these transactions. He controlled the entire situation and involved others to assist him in obtaining his goal." R. Vol. I, Doc. 299 at 8 (Mem. & Order July 7, 1994). Our review of the record reveals that Mr. Johnson maintained the majority of contact with the KBI and Agent Clark, and orchestrated the transactions with them. Mr. Johnson made the decision to sell the phenylacetone--rather than buy glassware to manufacture methamphetamine--and it was Mr. Johnson who set the sale price. When Mr. Johnson was subsequently incarcerated, he arranged by telephone for Robert Johnson and Mr. Niedfeldt to complete the transaction. When the KBI and Clark rejected this plan, Mr. Johnson thereafter instead arranged, again by telephone from jail, to complete the transaction upon his release. That Mr. Johnson continued to direct the sale of phenylacetone by telephone while incarcerated is highly indicative of his role in the offense. Moreover, upon his release, Johnson arranged for Niedfeldt to transport him to meet Agent Clark and, upon Agent Clark's payment, Niedfeldt complied with Johnson's order to get "the product."
 
 
 29
 This evidence sufficiently supports the district court's finding that Mr. Johnson was the decision-making authority figure and organized the activities of Mr. Niedfeldt and Robert Johnson. Accordingly, the district court's finding was not clearly erroneous.
 
 
 30
 For the reasons stated above, the sentence imposed by the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals, Third Circuit, sitting by designation
 
 
 [3]
 We have supplemented the record, on our own motion, with the transcript of the April 8, 1994, hearing and the 1992 presentence report
 
 
 [4]
 This was increased to life pursuant to USSG 4B1.1, R. Vol. VI para. 34; 21 U.S.C. 841(b)(1)(A)(viii)
 
 
 [5]
 This information is derived from the sentencing hearing transcript. The court stated:
 [T]he United States Probation Office is recommending a sentence at the top of the guideline range, 162 months based on the defendant's extensive prior criminal conduct for which he has prior convictions for similar offenses.
 The proposed findings of fact and tentative sentence: The total offense level is 28 and the criminal history category is now 5.
 Hearing Tr. at 82 (July 6, 1994). The PSR Addendum (the probation officer's recommendation is not attached to the record copy) cites an offense level of 32, criminal history category V.R. Vol. VI paras. 99, 102, 106.